WINSTON JONES, AS ASSIGNEE OF THE BANK OF MOBILE, RESPONDENT, v. THE MERCHANTS' NATIONAL BANK OF THE CITY OF NEW YORK, APPELLANT, AND THE BANK OF MOBILE.

*Bank holding securities, and stating in writing that they are held subject to the order of another bank, is not precluded from showing that it holds them as an indemnity under a prior agreement for advances made — certainly not if its written statement be not acted upon.*

In an action, brought by the assignee of the Bank of Mobile against the Merchants' National Bank for the recovery of certain bonds and coupons alleged to be in the possession of the defendant and belonging to the plaintiff, and also for an alleged balance of account, the defendant admitted the possession of the bonds, and also the balance due upon account, but claimed a lien upon both, because of certain transactions between such defendant and the Bank of Mobile, by reason of which it was entitled to hold these securities and this money as an indemnity for advances made.

Upon the trial of the action a letter of July 12, 1883, written by the cashier of the Bank of Mobile to the cashier of the defendant, was received in evidence as follows:

"DEAR SIR. — Please give me a list of bonds and securities now in your hands belonging to us, stating particulars and descriptions of securities, and very much oblige."

To which the following answer, under date of July 16, 1883, was returned by the assistant cashier of the defendant:

"DEAR SIR. — We hold, subject to your order, $25,000, M. & O. R. R. bonds, Cairo Ex." Following which was a description of the bonds.

It appeared by the evidence of the president of the defendant that the two banks had had dealings with each other, the defendant collecting paper for the Bank of Mobile, which drew drafts upon it, and that during all this time the defendant had in its hands securities belonging to the Bank of Mobile, consisting of paper for collection, exchange, bonds and cash, checks and sight drafts. The witness was asked: "For what were these securities held by you?" Which question was objected to and the objection sustained. He was then asked: "State anything which you recollect to have taken place between you and these parties in regard to the securities in your hands, and the right of your bank to hold them?" Whereupon the court ruled that the defendant could not rely upon any arrangement or agreement made prior to the date of the letter of July 16, 1883. The witness was subsequently asked: "Was there, prior to July 1, 1883, any arrangement between the Merchants' Bank and the Bank of Mobile in regard to the former bank holding the bonds which are referred to in controversy as security for loans, over-drafts and discounts made by your

bank for the benefit of the Bank of Mobile?" To which he replied, "Yes, sir." He was then asked: "Please state what that arrangement was and when it was made?" Objection was taken to this question, which was sustained, as was also an objection to an offer by the defendant to show what had been the course of dealings between the Merchants' Bank and the Bank of Mobile prior to July, 1883.

*Held,* that these rulings were clearly erroneous; that even if the letter of July 16, 1883, had been written by one of the officers of the bank, it could not have the force of depriving it of any arrangement or agreement under which it held these bonds, unless the same was acted upon by the Bank of Mobile, or the latter refrained from doing some act upon the faith of the letter.

That there was no estoppel, if the defendant was mistaken in regard to the rights it had in respect to these securities, as the Bank of Mobile did not appear to have been in any way injured thereby.

That while the securities held by the defendant might have been held subject to the order of the Bank of Mobile, it did not follow that that bank would have the right to withdraw these securities until it had satisfied its indebtedness to the defendant.

APPEAL by the Merchants' National Bank of the city of New York from a judgment, entered, after a trial at the New York Circuit before the court and a jury, at which a verdict was rendered in favor of the plaintiff, in the office of the clerk of the county of New York on the 4th day of February 1887, and from a judgment entered on the 30th day of March, 1887, *nunc pro tunc,* as of the 4th day of February, 1887, and also from a judgment entered in the office of the clerk of the county of New York September 23, 1887, *nunc pro tunc,* as of February 4, 1887.

By the judgment of February 4, 1887, it was adjudged that the plaintiff recover of and from the defendant, the Merchants' National Bank of the city of New York, the possession of certain personal property, bonds and securities therein mentioned, and also certain sums of money particularly specified therein.

*John E. Burrill* and *George Zabriskie,* for the appellant.

*Burton N. Harrison,* for the respondent.

VAN BRUNT, P. J.:

This action was brought by the plaintiff, as assignee of the Bank of Mobile, against the defendant, a banking corporation existing and carrying on business in the city of New York, for the recovery of pos-

session of certain bonds and coupons alleged to be in the possession of the defendant and belonging to the plaintiff, or for the value thereof in case a delivery could not be had, and, also, for the sum of $6,181.48, an alleged balance of account. The defendant by its answer admitted the possession of the bonds, and, also, the balance of account, but claimed a lien upon the bonds and money because of certain transactions had between the Bank of Mobile, of which the plaintiff is assignee, and the defendant; and that under an agreement between the defendant and the Bank of Mobile, the defendant had a right to hold these securities and money as an indemnity for any advances which might be made by way of discount or otherwise, which might at any time exist in its favor against the said Bank of Mobile.

The defendant further alleged, that at the request of the Bank of Mobile, it discounted certain commercial paper in the daily course of business, and that said paper had become due and was unpaid, and that there was due thereon, from said Bank of Mobile, the face thereof, with interest, which the defendant claimed and insisted was a lien upon the bonds and the balance in money in the complaint mentioned.

Upon the trial, the court directed a verdict in favor of the plaintiff for said bonds and coupons, and also for the balance on account, amounting to nearly $6,000. And from the judgment thereupon entered this appeal is taken.

It appeared from the evidence introduced upon the trial, that long prior to the year 1883, the Bank of Mobile and the defendant had been in the habit of having mutual dealings with each other, and that the bonds forming the subject-matter of the first cause of action set out in the complaint, had been deposited in the course of these dealings by the Bank of Mobile with the defendant.

In the disposition of this appeal, it is not necessary to rehearse in detail, the evidence given as to these transactions. Among other evidence offered upon the part of the plaintiff, it appears that on the 12th of July, 1883, the cashier of the Bank of Mobile addressed a letter to the cashier of the defendant in the following language :

"DEAR SIR.— Please give me a list of bonds and securities now in your hands belonging to us, stating particulars and descriptions of securities, and very much oblige."

To this an answer was returned on the 16th of July, 1883, by one McDonald, the assistant cashier of the defendant, in the following language :

" DEAR SIR.— We hold, subject to your order, $25,000 M. & O. R. R. bonds, Cairo. Ex." And here follows a description of the bonds.

The plaintiff having rested his case the defendant then examined the president of the Merchants' National Bank, the defendant, as a witness on its own behalf, who stated that he had been connected with the bank as an officer since 1858, as cashier up to 1868, and subsequent to that time as president; that the two banks had had dealings with each other during all the time he had been connected with the bank, except during the war; that their transactions at times had been very large ; that sometimes the Bank of Mobile had a large balance, and sometimes owed the defendant considerable money; that the defendant collected paper for the Bank of Mobile, and the Bank of Mobile was accustomed to draw drafts upon the defendant, and a regular banking account was kept between the two banks, and that during the time of his connection with the defendant it has had in its hands securities belonging to the Bank of Mobile ; that the nature of the securities was paper for collection, exchange, bonds and cash checks on various banks, and drafts at sight.

The witness was asked " For what were these securities held by you ? " This question was objected to unless it was limited to the particular securities in question, which objection was sustained and an exception taken. The witness was then asked to state the arrangement under which his bank held the securities. This was objected to on the same ground, the objection sustained and defendant excepted. The witness was asked : " State anything which you recollect to have taken place between you and these parties in regard to the securities in your hands and the right of your bank to hold them." The witness was going on to answer when the court interrupted the witness by the statement that it would rule that the defendant could not rely upon any arrangement or agreement made prior to the date of the letter of the 16th of July, 1883, but only upon some subsequent arrangement or agreement, and that it would try the case upon that theory. To this ruling the defendant duly excepted.

Subsequent to this time the president of the defendant was recalled and was asked the following questions: "Q. Was there, prior to July 1, 1883, any arrangement between the Merchants' Bank and the Bank of Mobile in regard to the former bank holding the bonds which are referred to in controversy as security for loans, over-drafts and discounts made by your bank for the benefit of the Bank of Mobile? A. Yes, sir. Q. Please state what that arrangement was and when it was made?" The plaintiff's counsel objected to the witness testifying as to the nature of the arrangement or as to what it was. The objection was sustained and the defendant excepted. The defendant then offered to show what had been the course of dealings between the Merchants' Bank and the Bank of Mobile prior to July, 1883. This evidence was objected to and excluded under exception. And then the question was reiterated. "Prior to July 1, 1883, was there any, and if so what, arrangement between the two banks in regard to these bonds?" This was objected to on the ground that what happened prior to the 16th of July, 1883, was immaterial and irrelevant. The objection was sustained and defendant excepted.

These rulings were clearly error. Even if the letter of July 16, 1883, had been written by one of the officers of the bank, yet it could not have the force of depriving it of any arrangement or agreement under which it held these bonds unless the same was acted upon by the Bank of Mobile or they refrained from doing some act upon the faith of this letter.

There was no estoppel if the defendant was mistaken in regard to the rights it had in respect to these securities. The Bank of Mobile does not appear to have been in any way injured, and it evidently was not intended to alter, change or vary the relations which had existed between the banks. Even if the letter is taken in its most literal terms, the securities held by the defendant may have been subject to the order of the Bank of Mobile. But it does not necessarily imply that the Bank of Mobile should have the right to withdraw these securities until they had satisfied their indebtedness or obligations to the defendant. These securities were not withdrawn; they were allowed to remain with the defendant, presumably upon the same understanding and agreement upon which they had been deposited prior to July 16, 1883. There was

no intention expressed by either party in this correspondence to alter the relations which existed between the banks. Even if the bonds, which formed the subject-matter of this suit, had been held as collateral to the indebtedness of the Bank of Mobile to the defendant, they were still the property of the Bank of Mobile; and when they were spoken of by the defendant as their property it in no manner affected any lien which the defendant had upon the property; and there does not appear to have been any intention upon the part of either party to change or alter, as already stated, any business relations existing between the two. At most, after the defendants had proven the arrangement under which they were entitled to hold the money or securities belonging to the Bank of Mobile as security upon the general account, this letter could be used, perhaps, as evidence, that such agreement did not exist. But it was clearly a question for the jury to determine as to whether this letter was in conflict with the claim made upon the part of the Bank of Mobile, that no such arrangement existed.

It is clear that this correspondence could not operate as an estoppel. In the absence of evidence that the Bank of Mobile had either done, or refrained from doing some act, because of the representations of the officers of the defendant, no estoppel could possibly arise; and the only pertinency and value of that evidence, in the absence of evidence creating an estoppel, would be in case the correspondence could have the effect of impairing the credit of the evidence upon the part of the defendant that an arrangement had been made with the Bank of Mobile prior to this time, such as they claim.

It is urged, upon the part of the respondent, that there is no conflict in the evidence as to any of the questions at issue. This is undoubtedly true, because, under the ruling of the court, all the evidence upon the part of the defendant was excluded, and the direction upon the part of the court upon the case as it now stands, of a verdict, was undoubtedly correct.

But the case was tried and the rulings were made as to the admission of evidence upon the erroneous theory that, by the correspondence of July, 1883, a change was made in the relations between these parties; that the agreement which had been made prior to that time was thereby abrogated, and that from that time forward,

the course of business between these two banks was changed. Under the ruling of the court the defendant was required to show an arrangement made subsequent to July 16, 1883. This the defendant was unable to do. It offered to prove, that prior to that time arrangements had been entered into such as they claim. This proof was excluded, as already stated, upon the theory that the letter of July sixteenth altered the arrangement which had been previously made, and that the course of business between these banks was thereby changed, and that the defendant had no right to rely upon the previous arrangements or understandings or course of dealing which had been established during the number of years in which these institutions had been doing business together.

For this error the judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

DANIELS and BARRETT, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant, to abide event.